UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-21300-Bloom

JIU XIANG CHEN,

    Petitioner,

vs

E.K. Carlton, Warden of FDC MIAMI,
FEDERAL BUREAU OF PRISONS, and
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

    Respondents.
_____/

## RESPONDENTS' RETURN TO ORDER TO SHOW CAUSE

Respondents, E.K. Carlton, Warden of FDC MIAMI, Federal Bureau of Prisons, and U.S. Immigration and Customs Enforcement ("ICE"), by and through the undersigned Assistant United States Attorney, and pursuant to the Court's Order to Show Cause (D.E. 3), hereby file this return, and in support thereof, state as follows:

### Introduction

Petitioner, Jiu Xiang Chen, filed the Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), "challenging [h]is conditions of confinement, denial of necessary and immediate medical care and treatment for his severe and advanced form of lung disease more commonly described as 'dermatomyositis interstitial lung disease.'" Pet. (D.E. 1) at ¶ 5. As detailed below, a petition for writ of habeas corpus is not the appropriate mechanism for challenging conditions of confinement, the Petitioner has received adequate medical care while in detention, and the Petition is moot. For these reasons, the Petition should be denied.

### Factual Background

1.     Petitioner is a native and citizen of China. Declaration of Deportation Officer ("DO") Jason Clarke attached hereto as Exhibit "A," at ¶ 4; Form I-213, Record of Deportable/Inadmissible Alien, dated January 26, 2025, attached hereto as Exhibit "B."[1]

2.     On or about May 27, 1993, Petitioner entered the United States without inspection by an immigration officer at or near San Francisco, California. Ex. A at ¶ 5; Ex. B.

3.     Petitioner was placed in deportation proceedings via the issuance of an Order to Show Cause ("OSC") dated July 6, 1995. OSC, dated July 6, 1995, attached hereto as Exhibit "C"; Ex. A at ¶ 6.

4.     On January 28, 1997, an Immigration Judge ("IJ") granted Petitioner the privilege of voluntary departure, allowing Petitioner to depart the United States voluntarily on or before October 28, 1997. Order of the IJ, dated January 28, 1997, is attached hereto as Exhibit "D"; Ex. A at ¶ 7; Ex. B.

5.     The IJ also issued an alternate order of deportation to China. Ex. A at ¶ 7; Ex. D.

6.     Petitioner failed to depart the United States. Ex. A at ¶ 8; Ex. B.

7.     As a result of his failure to depart, the alternate deportation became final. *See* 8 C.F.R. § 243.3(a)(1) (1995) (repealed) (stating that a deportation order is final and subject to execution upon the expiration of a grant of voluntary departure); *see also, e.g.*, 8 C.F.R. § 1241.1 (2016) (voluntary departure order automatically converts to a final removal order upon expiration of the voluntary departure period).

8.     On or about February 5, 2020, Petitioner was encountered by ICE and taken into ICE custody. Form I-213, Record of Deportable/Inadmissible Alien, dated February 5, 2020, is

---

[1] Exhibit B states that the Petitioner's "mother and father are both citizens and nationals of China by virtue of their birth in Honduras." Ex. B. The use of the word "Honduras" appears to be a scrivener's error. Ex. A at ¶ 4.

attached hereto as Exhibit "E"; EARM Detention History is attached hereto as Exhibit "F"; Ex. A at ¶ 9.

9. On May 7, 2020, Petitioner was released from ICE custody pursuant to an order of supervision. Ex. A at ¶ 9; Ex. F.

10. On January 26, 2025, Petitioner was taken into ICE custody at the Krome Service Processing Center ("Krome") in Miami, Florida.[2] Ex. A at ¶ 11; Ex. B; Ex. F.

11. The same day, Petitioner had an initial assessment by the medical staff at Krome. Petitioner's medical records from Krome are attached hereto as Exhibit "G," at 0048-0051. Petitioner presented with vital signs within normal range, including respirations (20 breaths per minute), blood pressure (138/89), and oxygen saturation (97%), and weighing 195 pounds. *Id*. Using a Chinese interpreter, Petitioner informed the medical staff that he suffered from hypertension and dermatomyositis, a condition similar to Lupus, requiring Mycophenolate and Tacrolimus to avoid an "episode." *Id*.

12. On January 27, 2025, Petitioner had a physical examination by the medical staff at Krome. *Id*. at 0041-0045. Petitioner's vital signs were taken again within normal limits, including respirations (18 breaths per minute), blood pressure (128/84), and oxygen saturation (99%), and he weighed 192 pounds. *Id*. Petitioner's lungs were clear to auscultation bilaterally. *Id*. Using a Chinese interpreter, Petitioner reported sinus congestion but denied cough or difficulty breathing. *Id*. Medication orders were entered for Mycophenolate 500 mg, Tacrolimus 1 mg, and Loratadine 10 mg. *Id*.

---

[2] Enforcement and Removal Operations ("ERO") records reflect that a notice advising Petitioner to report to ERO on January 16, 2025 was mailed to Petitioner on December 16, 2024. Ex. A at ¶ 10.

13. On February 10, 2025, Petitioner presented to the clinic at Krome with a medical emergency. *Id*. at 0037-0040. Using a Chinese interpreter, Petitioner complained of shortness of breath, nasal congestion, and itchy skin from sun exposure. *Id*. Petitioner's vital signs were within normal limits, including respirations (18 breaths per minute), blood pressure (134/96), and oxygen saturation (99%), and he weighed 192 pounds. *Id*. Petitioner's lungs were clear to auscultation bilaterally and negative for wheezing, rales, or rhonchi. *Id*. The medical staff informed Petitioner that there was no clinical indication for a transfer to a hospital. *Id*. Medication orders were entered for Triamcinolone Acetonide nasal spray, sunscreen lotion, and A&D ointment. *Id*.

14. On February 12, 2025, Petitioner was transferred to the Federal Detention Center in Miami, Florida ("FDC-Miami"). Ex. A at ¶ 12; Ex. F.

15. The same day, Petitioner had an intake screening by the medical staff at FDC-Miami. Petitioner's medical records from FDC-Miami are attached hereto as Exhibit "H," at 0011-0014. Petitioner's vital signs were within normal range, including respirations (16 breaths per minute), blood pressure (127/84), and oxygen saturation (100%). *Id*.

16. On February 13, 2025, Petitioner had a health screening by the medical staff at FDC-Miami. *Id*. at 0007-0010. Although a Chinese interpreter was not available, Petitioner and the staff member were able to communicate. Declaration of Nurse Practitioner ("NP") Ann Pryce attached hereto as Exhibit "I," at ¶ 7. Petitioner informed the staff member that he had a history of interstitial lung disease and was taking Mycophenolate and Tacrolimus for his condition. *Id*. at ¶ 4. In fact, Petitioner had the bottles of medication with him at the time of his screening. *Id*. Medication orders were entered for Mycophenolate 500 mg and Tacrolimus 1 mg to avoid a lapse in medication once he finished the medication he entered FDC-Miami with. *Id*.; Ex. H at 0007-0010. Additionally, diagnostic laboratory blood tests were ordered. Ex. H at 0007-0010; Ex. I at ¶ 4.

17. On February 27, 2025, the medical staff at FDC-Miami performed a chart review. *Id*. at 0006. Noting that Petitioner was stable on his current medication therapy and no medication changes were indicated, a refill of medications was ordered. *Id*.

18. On March 11, 2025, Petitioner had a full physical performed by the medical staff at FDC-Miami. Ex. H at 0016-0029; Ex. I at ¶ 5. Although a Chinese interpreter was not available, Petitioner and the staff member were able to communicate. Ex. I at ¶ 7. Petitioner's vital signs were taken within normal limits, including respirations (16 breaths per minute), blood pressure (127/86), and oxygen saturation (99%), and he weighed 180 pounds. Ex. H at 0016-0029; Ex. I at ¶ 6. Petitioner's lungs were clear upon auscultation and negative for wheezing, rales, or rhonchi. Ex. H at 0011-0024. Petitioner denied pain and unexplained weight loss. *Id*. Upon review of Petitioner's laboratory results, a medication order for Atorvastatin 20 mg was entered. *Id*.; Ex. I at ¶ 6.

19. On March 26, 2025, Petitioner was evaluated by the medical staff at FDC-Miami. Ex. H at 0003-0005; Declaration of Advanced Registered Nurse Practitioner ("ARNP") Yuanith Juarez attached hereto as Exhibit "J," at ¶ 3. Petitioner's vital signs were within normal range, including respirations (15 breaths per minute), blood pressure (136/87), and oxygen saturation (98%). Ex. H at 0003-0005; Ex. J at ¶ 5. Petitioner did not appear to be in distress with his breathing even and unlabored. Ex. H at 0003-0005; Ex. J at ¶ 5. Petitioner was also negative for any rashes or lesions. Ex. H at 0003-0005. Using a Chinese interpreter, Petitioner denied pain, shortness of breath, and/or any other symptom. *Id*.; Ex. J at ¶¶ 4, 5. After indicating that he had run out of his medication, ARNP Juarez personally gave Petitioner a bottle of Mycophenolate 500 mg and Tacrolimus 1 mg each. Ex. H at 0003-0005; Ex. J at ¶ 5. After conducting a medication reconciliation, medication orders were entered for Folic Acid 1 mg, Hydrocortisone Cream 1%,

Levocetirizine Dihydrochloride 5 mg, Metformin 500 mg, Tacrolimus 0.1%, and Trelegy Ellipta Inhalation Powder. Ex. H at 0001-0002; Ex. J at ¶ 6.

20. On March 28, 2025, Petitioner was transferred to Krome. Ex. F.

21. On March 30, 2025, Petitioner had an initial assessment by medical staff at Krome. Ex. G at 0028-0031. Petitioner presented with vital signs within normal range, including respirations (18 breaths per minute), blood pressure (127/87), and oxygen saturation (99%), and weighing 186 pounds. *Id*. Using a Chinese interpreter, Petitioner denied being in pain or experiencing a cough or unexplained weight loss for more than two weeks. *Id*. Petitioner informed the medical staff that he suffered from Lupus and took Mycophenolate and Tacrolimus for his condition. *Id*.

22. On March 31, 2025, medical staff at Krome entered medication orders for Mycophenolate 500 mg and Tacrolimus 1 mg. *Id*. at 0025.

23. That afternoon, Petitioner was noted to have interstitial lung disease and was transferred to Larkin Hospital. *Id*. at 0023-0024.

24. Petitioner was admitted to Larkin Hospital for observation of intractable abdominal pain. Petitioner's medical records from Larkin Hospital are attached hereto as Exhibit "K," at 0003-0005. Petitioner vital signs were taken within normal limits upon arrival, including respirations (16 breaths per minute), blood pressure (137/84), and oxygen saturation (99%), and weighed 185 pounds. *Id*. Petitioner's lungs had equal breath sounds bilaterally, were clear to auscultation, and no rales, rhonchi, or wheezing were noted. *Id*.

25. On April 2, 2025, Petitioner was discharged from Larkin Hospital and transferred to Krome. Ex. B; Ex. K at 0023-0030.

26. The same day, Petitioner was examined by the medical staff at Krome. Ex. G at 0017-0018. Petitioner's vital signs were taken within normal limits, including respirations (18 breaths per minute), blood pressure (123/84), and oxygen saturation (99%). *Id*. A medication order was added for Methylprednisolone 4 mg. *Id*.

27. On April 3, 2025, Petitioner was admitted to the medical housing unit at Krome. *Id*. at 0013-0016.

## Memorandum of Law

### a. A Petition for Writ of Habeas Corpus is Not the Appropriate Mechanism for Challenging Conditions of Confinement[3]

An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The "sole function of habeas corpus is to provide relief from [u]nlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979).[4]

There are two "main avenues to [seek] relief on complaints related to imprisonment": a petition for habeas corpus and a civil rights complaint. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus"; however, relief from which is sought based upon the "circumstances of confinement" is available through a civil rights action. *Muhammad*, 540 U.S. at

---

[3] Petitioner cites to authority from and within the Second Circuit Court of Appeals for the proposition that 28 U.S.C. § 2241 is the proper vehicle to challenge conditions of confinement. Pet. at 8. Such cases are neither binding nor persuasive in light of established jurisprudence in the Eleventh Circuit to the contrary.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

750; *see also Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (a "§ 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement"). The appropriate relief from the conditions of confinement that violate the Constitution is to require the discontinuance or correction of any improper practices, it does not include release from confinement. *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990).

Petitioner does not claim that he is wrongfully detained under the Immigration and Nationality Act or that his detention is unlawful. In fact, Petitioner concedes that he has an order of removal. Pet. at 3 (acknowledging that Petitioner "never self-deported which converted the voluntarily [sic] removal to an order of deportation . . . by operation of law"). Rather, by his own assertion, Petitioner is "challenging [h]is conditions of confinement, denial of necessary and immediate medical care and treatment for his severe and advanced form of lung disease[.]" Pet. at ¶ 5. Even if the Court found merit in Petitioner's claim, which Respondents deny, Respondents would presumably be ordered to provide a translator and the medical treatment Petitioner requests—which Respondents have already done. Petitioner would not be released.

Because Petitioner's claim challenges the conditions of his confinement, not the fact or duration of his detention, the claim is not properly asserted in a habeas action. On this basis alone, the Petition should be denied.

### b. Petitioner Has Received Adequate Medical Care While in Detention[5]

---

[5] Petitioner asserts Eighth and Fourteenth Amendment claims to support his request for habeas relief. The Fifth Amendment Due Process Clause, not the Eighth Amendment, governs a federal detainee's inadequate medical care claim. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause [of the Fifth Amendment] protects an alien subject to a final order of deportation[.]"). Further, the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, governs federal action. *Rodriguez-Padron v. Immigration & Naturalization Serv.*, 13 F.3d 1455, 1458 n.7 (11th Cir. 1994). Petitioner does not allege that Respondents are state actors or that they conspired with state actors. Nevertheless, the standard for

The Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Conditions of confinement violate the Eighth Amendment if (1) objectively speaking, the conduct by public officials is "sufficiently serious" to constitute a cruel or unusual deprivation; and (2) there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

To show an objectively serious deprivation in a medical context, it is necessary to demonstrate (1) an objectively serious medical need that, if left unattended, would pose a substantial risk of serious harm; and (2) the response was poor enough to constitute an unnecessary and wanton infliction of pain—not just negligence or even medical malpractice. *Id*. at 1258. To show the required subjective intent to punish, it is necessary to establish that the public official acted with deliberate indifference. *Id*. That is, "awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . drawing of the inference." *Id*. (alterations accepted).

Where a prisoner has received medical attention, courts are hesitant to find that an Eighth Amendment violation has occurred. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). An inadvertent failure to provide adequate medical care cannot constitute "an unnecessary and wanton infliction of pain" or be "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06; *see also Alfred v. Bryant*, 378 F. App'x 977, 979 (11th Cir. 2010) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)) ("A prison condition generally does not violate the

---

a federal detainee's treatment under the Fifth Amendment is identical to those under the Eighth Amendment. *Daniel v. U.S. Marshall Serv.*, 188 F. App'x 954, 961-62 (11th Cir. 2006).

Eighth Amendment unless it involves 'the wanton and unnecessary infliction of pain.'"). "[T]he Constitution doesn't require that the medical care provided to prisoners be perfect, the best obtainable, or even very good. Rather, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (internal quotation marks and citations omitted and alterations accepted).

Petitioner has failed to show an objectively serious deprivation with a subjective intent to punish. Indeed, Petitioner has received adequate medical care while in detention.

Since his detention, Petitioner has been examined or treated by medical staff at Krome and FDC-Miami at least eight times: January 26, 2025; January 27, 2025; February 10, 2025; February 12, 2025; February 13, 2025; March 11, 2025; March 26, 2025; and March 30, 2025. Petitioner has been clinically stable each time, showing no signs of respiratory distress. There have been multiple medication orders entered for Mycophenolate 500 mg and Tacrolimus 1 mg at both facilities. When necessary, Petitioner was transferred to Larkin Hospital for treatment.

Clearly, Petitioner has received adequate medical care while he has been detained at Krome and FDC-Miami.

### c. To the Extent Petitioner Could State a Claim for Deliberate Indifference to a Serious Medical Need, the Petition Should be Dismissed as Moot

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)).

While detained at Krome, medication orders were entered and filled for Mycophenolate 500 mg and Tacrolimus 1 mg. While detained at FDC-Miami, medication orders were entered and filled for Mycophenolate 500 mg and Tacrolimus 1 mg. Assuming, *arguendo*, Petitioner had not received his medications at FDC-Miami at the time the Petition was filed, which Respondents deny, on March 26, 2025, ARNP Juarez at FDC-Miami personally gave him a bottle of Mycophenolate 500 mg and Tacrolimus 1 mg each. On March 31, 2025 and April 2, 2025, upon Petitioner's return to detention at Krome, medication orders were entered and filled for Mycophenolate 500 mg and Tacrolimus 1 mg.

To the extent Petitioner could state a claim for deliberate indifference to a serious medical need, such a claim is moot and should be dismissed. *See Keohane*, 952 F.3d at 1270 (dismissing as moot a deliberate indifference to a serious medical need claim where the treatment sought was provided shortly after a petition for a writ of habeas corpus was filed).

## Conclusion

Based on the foregoing, Respondents respectfully request that the Court deny the Petition and grant such other relief deemed just and proper.

Respectfully submitted,

**HAYDEN P. O'BYRNE**
**UNITED STATES ATTORNEY**

By: *Amy L. Soto*
AMY L. SOTO
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 124858
E-Mail: amy.soto@usdoj.gov
99 NE 4th Street, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9368

*Counsel for Respondents*