UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case No. 25-cv-31300-Bloom/Elfenbein**

JIU XIANG CHEN,

      Petitioner,

v.

E.K. CARLTON, Warden of FDC Miami
FEDERAL BUREAU OF PRISONS and U.S.
IMMIGRATION AND CUSTMS ENFORCEMENT

      Respondents.
_____/

**PETITIONER JIU XIANG CHEN'S REPLY TO RESPONDENTS'
RESPONSE TO SHOW CAUSE ORDER**

Petitioner JIU XIANG Chen, by and through his counsel files this, his Reply to the Respondents E.K. Carlton, Warden of FDC MIAMI, Federal Bureau of Prisons, and U.S. Immigration and Customs Enforcement ("ICE") (collectively referred to as "Respondents")_, and in support thereof states the following:

**I.    PREFATORY STATEMENT**

Pending before this Court is Petitioner's emergency verified 2241 petition, alleging, among other things, Respondent's failure of refusal to provide Petitioner medically necessary care and treatment for his lung disease and related illnesses. *ECF No. 1*. This Court entered an order to show cause directed at Respondents to file a response by March 27, 2025 why the 2241 habeas petition should not be granted. *ECF No. 3*.[1] On March 16, 2025, Petitioner filed a

---

[1] [1] This Court extended the deadline for the Respondents to file a response to the show cause order to and including April 3, 2025. *ECF No. 7*.

1

declaration of Yamei Wang, the wife of Petitioner, detaining communications between Petitioner and his wife relating to the failure or refusal of the Respondents to provide medically necessary medicines and treatment and care for his lung disease and related illnesses. *ECF No. 5*.

On March 28, 2025, Respondents moved Petitioner from FDC-Miami to the extremely overcrowded Krome detention center, where Respondent ICE left Petitioner in a cell without a blanket, pillow and forced to sleep on the cold cement floor where there were 29 other detainees in the same cell. When Petitioner requested for the medicines for his lung disease and related illness, the ICE officer told Petitioner his medication was lost in the transfer. Petitioner requested the ICE officers to provide medicines and treatment and care for his lung diseases, ICE Officers told Petitioner they were too busy processing many detainees.

On April 31, 2025, the undersigned counsel provided counsel for Respondents,[2] pursuant to S.D. Fla. Local Rules 7.1(a)(3)(A),, Petitioner's proposed emergency motion seeking an order from this Court to:

1. Prohibiting Respondent ICE from removing Petitioner from this district;
2. Directing Respondent ICE to provide Petitioner a blanket and mattress;

---

[2] AUSA Amy Soto moved immediately to contact ICE officials and its counsel, providing them a copy of the proposed emergency motion – her efforts which clearly impacted ICE's decision to immediately transfer Petitioner to Larken Hospital – a transfer which led to Petitioner's hospitalization for two days. "Government lawyers have responsibilities and obligations different from those facing members of the private bar. While the latter are appropriately concerned first and foremost with protecting their clients -- even those engaged in wrongdoing -- from criminal charges and public exposure, government lawyers have a higher, competing duty to act in the public interest." *In re witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002), *See also, United States v. Finazzo*, 704 F.2d 300, 309 (6th Cir. 1983) (as government representatives, Assistant United States Attorneys have a "higher duty cast upon them"). This includes "the duty to protect the interests of all people[.]" *United States v. McClintock*, 748 F.2d 1278, 1285 (9th Cir. 1984) (internal quotation and citation omitted). AUSA Soto's actions in this case certainly served the interests of justice and the community of Miami Dade County, for which Petitioner and undersigned counsel are grateful.

3. Directing Respondent ICE to cause a competent physician to immediately exam Petitioner and submit written report to the Court and explanation why ICE failed or refused to provide to Petitioner the medicines Respondents claimed they provided to Petitioner while Petitioner was detained in FDC-Miami;

4. *Alternatively*, order Petitioner's immediate release from ICE custody and direct ICE to place GPS monitoring device on Petitioner's ankle.

*Exhibit 1 hereto*. ICE's response to Petitioner's proposed emergency motion was not to challenge the factual claims asserted, but rather transport Petitioner immediately to Larken Hospital, where Petitioner was admitted for approximately two days. ICE's actions here obviated the need to file the emergency motion and avoided impacted the precious resources of this Court.

ICE who now has complete custody of Petitioner inside its Krome detention center, claims: (1) Petitioner is receiving the medically necessary care and treatment while confined in its medical clinic ward, citing medications being ordered to be given to Petitioner; (2) although no Chinese translator was present at the screening process and other staff contacts with Petitioner at FDC-Miami, the staff were somehow able to communicate with Petitioner [3].; and (3) this Court lacks jurisdiction since 28 U.S.C. 2241 does not grant authority to this Court to address in a habeas case the deplorable prison conditions at Krome or FDC-Miami, warranting summarily dismissal of the 2241 habeas petition.

Petitioner submits this Court has jurisdiction to reach the merits of the 2241 habeas petition and grant the relief requested therein as more fully shown below. Petitioner needs constant care and treatment for this lung disease and related illnesses. Given the horrible

---

[3] Petitioner who doesn't speak any English – not a lick. Nor does Petitioner know sign language

conditions of the detention facility, the forcing of Petitioner to sleep without a blanket and/or pillow on the cold concrete floor of the cell with 29 other detainees, and the deprivation of medical care and treatment for his life threatening disease and related illnesses, Petitioner submits this Court should order his release on an ankle monitor in order that he can continue obtain at no cost to the government the continued medically necessary care and treatment for his incurable disease and related illness. [4]

## II. THIS COURT HAS JURISDICTION TO REACH THE MERITS OF 2241 HABEAS PETITION AND GRANT THE REQUESTED HABEAS RELIEF

Petitioner disputes some of the factual claims made by Respondents which will be discussed below, but first question needed to be addressed is whether this Court has jurisdiction to reach the merits of Petitioner's habeas claims presented in the 2241 petition. Respondents'= say no and Petitioner submits case law says yes.

Per the Supreme Court, courts must apply the habeas statute with an eye to the underlying equitable nature of the writ. *See Brown v. Davenport*, 596 U.S. 118, 132 (2022); *Holland v. Florida,* 560 U.S. 631, 646 (2010); *Boumediene v. Bush*, 553 U.S. 723, 780 (2008); *Munaf v. Green,* 553 U.S. 674, 693 (2008); *Schlup v. Delo*, 513 U.S. 298, 319 (1995).

---

[4] The Respondents claim that in December 2024, ICE had issued to Petitioner a notice to appear for the (annual) January 16, 2025 interview at ICE's field office, citing a declaration of ICE A\Officer Jason Clarke. However, such a verified factual claim by this ICE official cannot be reconciled with the U.S. postal stamped receipt on the ICE's envelope containing the notice to appear correspondence which clearly shows the notice to appear was mailed or postmarked on January 15, 2025 and processed at the Miami postal distribution center on January 16, 2025, the very day that Petitioner was required by ICE to report to the ICE field office for the interview. *See Exhibit 2 hereto*. The fact is but for the failure or refusal to timely mail the notice to appear for the interview to Petitioner, Petitioner would have appeared at the ICE interview and allowed to continue his release in the community with the GPS monitor.

Petitioner is now being incarcerated by ICE at Krone detention center. Given the filing of the habeas petition in this Court and Petitioner is still physically in Southern District of Florida, this Court has jurisdiction over Petitioner and his claims presented in the habeas petition. *See, e.g.*, *Rasul v. Bush*, 542 U.S. 466 (2004) (recognizing that § 2241 confers jurisdiction to grant habeas relief for detainees at Guantanamo Bay); *Calcano-Martinez v. INS*, 533 U.S. 348 (2001) (finding § 2241 jurisdiction for immigration detainees); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862–63 (2017) (suggested that habeas may actually offer a more expedient avenue for relief than filing a *Bivens* suit for monetary damages) ; *Johnson v. Avery*, 393 U.S. 483, 484 (1969);  *Muniz v. Sabol*, 517 F.3d 29, 33–34 (1st Cir. 2008) (stating execution of a sentence includes challenges to the place of confinement); *Dhinsa v. Krueger,* 917 F.3d 70, 81 (2d Cir. 2019) ("challeng[ing] 'the *execution* of a sentence' include[es] challenges to disciplinary actions, prison conditions, or parole decisions" (*Adams*, 372 F.3d at 135) (emphasis in original)); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020) ("We have never held that a detainee cannot file a habeas petition to challenge conditions that render his continued detention unconstitutional."); *United States v. Jalili*, 925 F.2d 889, 893–94 (6th Cir. 1991) (holding execution of a sentence petitions may challenge the place of confinement); *Creek v. Stone*, 379 F.2d 106, 109 (D.C. Cir. 1967) ("[I]n general habeas corpus is available not only to an applicant who claims he is entitled to be freed of all restraints, but also to an applicant who protests his confinement in a certain place, or under certain conditions, that he claims vitiate the justification for confinement.").

A. **Respondents' Deliberate Indifference to Petitioner's serious medical needs.**

Upon Petitioner's detention in Krome Detention center, ICE was informed of Petitioner's lung disease and related illnesses. In fact, they were provided a letter from Petitioner's attending physician. In an effort to relieve the 109% over population of Krome detention center, ICE

5

transferred Petitioner to FDC-Miami. There, Petitioner was unable to speak to anyone because no prison staff member or medical staff spoke Chinese mandarin. He was merely processed through the system at FDC-Miami and placed in a cell. Although Respondents claim their records show medicines were **ordered** at various times, Respondents did not dispute Petitioner's factual claims that he wasn't given the medication needed for his life-threatening lung disease and related illnesses.

The Respondents seem to claim that any inadvertent failure to provide medical care to Petitioner does not "constitute an unnecessary and wanton infliction of pain or be repugnant to the conscience of mankind." *Respondents' Response at p.9* (internal quotations and citations omitted). But the instant habeas case is one of deliberate indifference to Petitioner's serious and medically necessary care and treatment for his lung disease and related illnesses – a clear Eighth Amendment violation. This is a habeas case of 'the wanton and unnecessary infliction of pain" by Respondents onto Petitioner.

This is a case where Respondents acted so grossly incompetent and inadequate, as to shock the conscience of the Miami Dade community or to be intolerable to fundamental fairness. The factual claims that are in dispute must be resolved by way of an evidentiary hearing before this Court. Nonetheless, a 2241 petition is proper to raise a claim of cruel and unusual punishment administered by the Respondents upon Petitioner.

For individuals in federal custody, this question is easily resolved — § 2241(c)(1) provides that the writ may extend to a prisoner who "is in custody under or by color of the authority of the United States or is committed for trial before some court thereof." This language tracks with the Judiciary Act of 1789, which empowered federal courts to grant habeas relief to individuals in custody under federal, rather than state, law. *Judiciary Act of 1789*, ch. 20, § 14, 1

6

Stat. 73, 81–82. Under the statute, the federal courts may extend a writ of habeas corpus, that is, an order to produce the body, to anyone detained pursuant to federal law. The alternative meaning of the phrase "in custody in violation of the Constitution or laws or treaties of the United States" would be that the fact of someone's being in custody at all is in violation of federal law. In other words, the person's being in custody, versus out of custody, is in violation of the Constitution or laws or treaties of the United States.

Here, Respondents' acts constitute a violation of the Eighth Amendment to the U.S. Constitution.

**B. ICE officials compelling Petitioner to sleep on a cold concrete floor – no mattress no pillow no blanket with 29 detainees in the same room, together with Krome Detention Center being 109% overpopulated with detainees are prison conditions that are deplorable and place Petitioner at a high risk of injury or <u>death given his life threatening lung disease and related illnesses</u>.**

This Court has jurisdiction over the habeas petition on the claim of horrible prison conditions at Krome Detention Center which Petitioner has been subjected to adverse and harsh treatment. In fact, most recently, the Miami Dade County Mayor issued a letter to ICE officials requesting that she and other county officials be allowed to inspect the Krome facility having received photos taken within Krome showing the overcrowded facility and deplorable prison conditions. *See Exhibit 3 hereto*.

Upon Petitioner's transfer back to Krome, he was forced to sleep on the cold concrete floor with no coverings, left to shiver all night waking up to the cold air blowing on him.[5]

---

[5] District Courts are mindful that immigration officials often transfer detainees from one immigration detention center to another detention center pursuant to operational management, i.e. available bed space. *Khalil v. Joyce*, 2025 U.S. Dist. LEXIS 50870 * ("The practical, and

7

Mindful that he is ill, serious ill, Respondent ICE tossed him out on the cold floor to survive in the cold cell amongst 29 detainees. No medicine, no treatment or care for his lung disease and illnesses by Respondent ICE. But when Petitioner's counsel emailed a proposed emergency motion to be filed in the instant case detailing all the gross neglect by ICE officials, only then ICE decided to transport Petitioner to Larken Hospital where the outside medical physicians admitted Petitioner into the hospital. But for this proposed emergency motion and the acts of AUSA Amy Soto, Petitioner would have continued to suffer in pain and discomfort – a form of cruel and unusual punishment – an Eighth Amendment violation and one which is in violation of the U.S. Constitution and federal law.

---

unfortunate, reality is that "the Government regularly transfers detained noncitizens between facilities, often multiple times."); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 570, 142 S. Ct. 2057, 213 L. Ed. 2d 102 (2022) (Sotomayor, J., concurring in the judgment in part and dissenting in part); see also Demore v. Kim, 538 U.S. 510, 554, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003) (Souter, J., concurring in part and dissenting in part) (explaining that immigration officials "detain, transfer, and isolate aliens away from their lawyers, witnesses, and evidence"); *see also Anariba v. Dir. Hudson Cnty. Corr. Ctr.,* 17 F.4th 434, 448 (3d Cir. 2021) (noting that "continuous transfer" can "permeate[] the reality of ICE detention"). And transfers to remote locations are routinely made without any prior notice to counsel. See Anariba, 17 F.4th at 448 (discussing how "the Government often repeatedly moves ICE detainees to remote locations far from counsel or their community without informing counsel of the transfer" (internal quotation marks omitted)); *Bell v. Ashcroft*, No. 03-CV-766 (HB), 2003 U.S. Dist. LEXIS 18425, 2003 WL 22358800, at *3 (S.D.N.Y. Oct. 15, 2003) (observing that "aliens in federal custody are routinely transferred . . . to other, often far-away, facilities"); *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1500 (C.D. Cal. 1988) ("INS follows a general practice of transferring detained class members from the place of arrest to detention centers located in remote and isolated areas."), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990). But in Petitioner's case here, it made no sense for ICE to transfer Petitioner back to Krome where the ICE officials lacked bed space and the inability or manpower to care for Petitioner's lung disease and related illnesses.

### III. EVIDENTIARY HEARING WARRANTED

Petitioner requests this Court to hold an evidentiary hearing at the earliest possible date to resolve the factual claims in dispute in the instant habeas case. Respondents have provided declarations of ICE and prison officials claiming things from sending a notice to appear for a January 16, 2025 interview which purported was mailed in December 2025 when inf act it was mailed on January 15, 2025 and received by Miami mail distribution center on January 16, 2025, the day of the ICE scheduled interview to claims that Respondents had ordered the medicines for Petitioner but no declaration from the staff member who actually gave the medicines to Petitioner, absent one occasion where the staff member gave him a bottle of medicine to keep with him. Further, there has been no evidenced produced by Respondents to refute the claims of forcing Petitioner to sleep on the cold concrete floor without any coverings or mattress or hygiene products. The fact is the Krome detention center is a dungeon where detainees are left to sleep on the floor in unimaginable deplorable conditions and crowded cell, a form of cruel and unusual punishment.

The belated transfer of Petitioner by ICE to the Larken hospital only occurred because of the threat of filing the emergency motion seeking emergency relief from this Court. Make no mistake, but for the promise of filing the motion at 4:30pm on march 31, 2025, Petitioner would have suffered greatly and been in pain and discomfort.[6]

### IV. CONCLUSION

Petitioner requests this Court to grant the habeas relief requested in his habeas 2241 petition, which includes but not limited to an order directed at Respondent ICE to release

---

[6] As reported by the Larken Hospital doctors, Petitioner suffered "abdominal pain, constipation." *See Respondent's Response at Exhibit K, p.4.*

9

Petitioner with the GPS ankle monitoring device in order that he can obtain the constant medically necessary care and treatment for his life-threatening lung disease and related illness.

Miami, Florida                                      Respectfully submitted

LAW OFFICES OF ANDRE A. ROUVIERE
4070 Laguna Street
Coral Gables, Florida 33146
Tel: (305)774-7000
Fax:(305)946-6121

*//ss// Andre Rouviere*
ANDRE A. ROUVIERE
Attorney for Petitioner.

## CERTIFICATE OF SERVICE

I, Andre Rouviere, hereby certify that a true and correct copy of the foregoing Notice and declaration of Yumei Wang and attachments thereto were served on all counsel of record via ECF and the Asst. U.S. Attorney AMY L. SOTO via email Amy.Soto@usdoj.gov on this 7th day of April 2025.

*//ss// Andre A. Rouviere*
Andre A. Rouviere